# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

**BAP NO. MW 24-016**

**Bankruptcy Case No. 23-40709-CJP**

**WESTBOROUGH SPE LLC,**
**Debtor.**

**LOLONYON AKOUETE,**
**Appellant,**

**v.**

**NATHANSON & GOLDBERG, P.C.; MOBILESTREET TRUST;**
**TOWN OF WESTBOROUGH; and**
**JONATHAN R. GOLDSMITH, Chapter 7 Trustee,**
**Appellees.**

**Finkle, Chief U.S. Bankruptcy Appellate Panel Judge;**
**Lamoutte and Cabán, U.S. Bankruptcy Appellate Panel Judges.**

## JUDGMENT OF DISMISSAL

Lolonyon Akouete (the "Appellant") appeals from the bankruptcy court's July 25, 2024 order denying his Motion for Interim Distribution (the "Order"). For the reasons set forth below, we conclude the Order is interlocutory and, therefore, not appealable as of right. Additionally, we decline to exercise our discretionary authority to hear this appeal. Accordingly, the appeal is **DISMISSED** for lack of jurisdiction.

## BACKGROUND

### I. Commencement of the Bankruptcy Case

In August 2023, Nathanson & Goldberg, P.C., and MobileStreet Trust (collectively, the "Petitioning Creditors") filed an involuntary chapter 7 petition against Westborough SPE LLC

(the "Debtor"). On its bankruptcy schedules, the Debtor listed assets totaling over $9 million, consisting of the Debtor's interest in real property located at 231 Turnpike Road, Westborough, Massachusetts (the "Property") and about $1.2 million in funds held by the California State Controller's Office.

The bankruptcy court entered an order for relief on October 11, 2023, and Jonathan R. Goldsmith (the "Trustee") was appointed chapter 7 trustee. A Notice of Chapter 7 Bankruptcy Case was issued on October 12, 2023, informing creditors that the deadline to file proofs of claim was January 9, 2024.

In December 2023, the Appellant—who purports to be the "manager" of the Debtor—filed a proof of claim, asserting an unsecured claim of about $625,000. He amended his proof of claim on June 23, 2024, to increase the amount to about $1,250,000. He identified the basis of his amended claim as: "Services performed (Management and Asset Recovery)."

## II. Town of Westborough's Motion for Relief from Stay and Motion to Dismiss

On October 3, 2023, the Town of Westborough (the "Town") filed a motion for relief from the automatic stay to continue a tax foreclosure action against the Property in the Massachusetts Land Court (the "Tax Foreclosure Action"). The Town asserted that a tax foreclosure judgment had been entered against the Debtor in January 2022, and the Debtor was seeking to vacate that judgment. On the eve of an evidentiary hearing in the Land Court on the motion to vacate, the Petitioning Creditors filed the involuntary petition against the Debtor, thereby staying the Tax Foreclosure Action. Therefore, the Town sought stay relief so the Land Court could adjudicate the motion to vacate and conclude the Tax Foreclosure Action.

Thereafter, on January 16, 2024, the Town moved to dismiss the bankruptcy case for cause, asserting that the involuntary petition was "an abuse and manipulation of the Bankruptcy

Code designed solely to hinder final resolution of the Tax Foreclosure Action." According to the Town, the involuntary petition against the Debtor was filed by the Debtor's own counsel as "a strategic maneuver to frustrate the Land Court's adjudication of the Tax Foreclosure Action" and the Town's "disposition of real property that the Town acquired through the Tax Foreclosure Action." The Trustee, the Petitioning Creditors (collectively), and Nathanson & Goldberg, P.C. (individually) filed objections to the motion to dismiss.

The next day, the Trustee removed the Tax Foreclosure Action to the bankruptcy court. The Town then moved for the bankruptcy court to either remand the action to the Land Court or abstain from hearing it, arguing that the Property was not property of the bankruptcy estate. See Adv. Pro. No. 24-04006. Subsequently, the Trustee, the Town, and certain other creditors, including the Petitioning Creditors, commenced negotiations to resolve all disputes between them and all issues concerning the Property as part of the administration of the bankruptcy estate. While settlement negotiations were ongoing, hearings on the Town's motions were continued numerous times.

## III. Appellant's First Motion for Interim Distribution

On February 11, 2024, the Appellant filed a Motion for Interim Distribution (the "First Motion for Interim Distribution"). Citing Fed. R. Bankr. P. 3009 and emphasizing that the claims bar date had passed, the Appellant requested an order authorizing interim distributions of almost $1 million to seven creditors, including $250,000 to the Appellant and about $468,000 to the Petitioning Creditors. The Appellant argued that interim distributions were "necessary to address the critical financial obligations of the Debtor and to provide some relief to creditors." He further contended that "[t]he funds currently available in the estate [about $1.2 million],

along with the potential for further recovery [from the sale of the Property], justify the proposed interim distribution plan."

The Petitioning Creditors, the Trustee, and the Town filed objections to the First Motion for Interim Distribution. The Trustee argued that an interim distribution would be "premature" as he was finalizing his review of the proofs of claim filed and intended to object to some of them. The Petitioning Creditors "adopt[ed]" the Trustee's objection and further stated that a partial interim distribution would "only serve to delay the ultimate recovery in full of creditors . . . ." The Town objected on the following grounds: (1) the Appellant lacked authority to act as a manager for the Debtor; and (2) the Appellant's motions were intended to interfere with the Town's disposition of the Property, which was once owned by the Debtor but title to which was now "vested in the Town pursuant to a pre-petition tax title foreclosure judgment."

On March 19, 2024, the bankruptcy court, without a hearing, entered an order denying the Appellant's motion as "premature." The bankruptcy court did not elaborate further on the basis for its ruling.

## IV. Appellant's Second Motion for Interim Distribution

Three months later, on June 19, 2024, the Appellant filed another Motion for Interim Distribution ("Second Motion for Interim Distribution"), stating:

> [T]he bankruptcy estate has been open for over nine months, and more than five months have elapsed since the deadline for filing proofs of claim. This significant passage of time highlights that an interim distribution is no longer premature. The funds currently available in the estate, totaling over $1.29 million, combined with the anticipated proceeds from the sale of the 231 Turnpike Road property, provide ample liquidity to support an interim distribution. The real delay in this case stems from the settlement proposal that the Town of Westborough and the Trustee have been negotiating for over seven months. This settlement proposal involves key parties such as LAX Media, Nathanson and Goldberg, Mobile Street Trust, Ferris Development Group, the Town of Westborough, the Chapter 7 Trustee, and the debtor.

> The primary term of the settlement is the sale of the property at 231 Turnpike Road to either LAX Media or Ferris Development, with a structured financial distribution from the sale proceeds. . . .
>
> . . . .
>
> Given the complexity and duration of [the settlement] negotiations, it is clear that the settlement proposal will take a significant amount of time to resolve fully. The settlement should not hold up all creditors indefinitely. It should only affect those who are part of it, especially when the bankruptcy estate has sufficient funds to pay creditors who are not included in the settlement. The Trustee should be ordered to evaluate the claims of creditors who are not part of the settlement and make payments based on the available funds in the bankruptcy estate.

Again, the Petitioning Creditors, the Trustee, and the Town objected. The Trustee reasserted his argument that interim distributions would be "premature" because he intended to object to several claims, including the amended claim filed by the Appellant. The Town contended that its original grounds for objecting to the Appellant's First Motion for Interim Distribution remained unchanged and that the Appellant's newly asserted complaints of delay caused by settlement negotiations between the Trustee and the Town did not entitle the Appellant to an interim distribution. The Petitioning Creditors opposed the motion on the ground that "any interim distribution at this point (especially given [the Appellant]'s recent motion to significantly increase the amount of his claim through an amendment to his existing Proof of Claim) would impede the orderly administration of th[e] bankruptcy case and result in unforeseeable, unintended and potentially negative consequences to the estate and its creditors."

## V. Motion to Approve Settlement Agreement

On July 8, 2024, the Trustee filed a motion seeking court approval of a "global" settlement agreement between the Trustee and certain creditors (including the Town and the Petitioning Creditors, but not the Appellant) which would "finally resolve all of the contested issues between and among the Parties surrounding [the Property]," including whether the Property was an asset of the Debtor's bankruptcy estate. The Appellant objected to the motion

arguing, among other things, that the settlement "does not serve the best interests of the creditors or the bankruptcy estate" as it "undervalues the Debtor's primary asset, fails to maximize the return for creditors, and improperly grants an exclusive sale period to a lower bidder."

### VI. Order Denying Second Motion for Interim Distribution

Two weeks later, on July 25, 2024, the bankruptcy court, again without a hearing and without elaboration, entered the Order denying the Second Motion for Interim Distribution "as premature." This appeal followed.

## APPELLATE JURISDICTION

"It is black-letter law that a federal court has an obligation to inquire sua sponte into its own subject matter jurisdiction." McCulloch v. Vélez, 364 F.3d 1, 5 (1st Cir. 2004) (citations omitted). Therefore, "we must assay our jurisdiction before proceeding on the merits." Haddock Rivera v. ASUME (In re Haddock Rivera), 486 B.R. 574, 576 (B.A.P. 1st Cir. 2013).

### I. Final Orders: Appealable as of Right

We have jurisdiction to hear appeals from: (1) final judgments, orders, and decrees; or (2) with leave of court, from certain interlocutory orders. 28 U.S.C. § 158(a)-(c); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 589 U.S. 35, 39 (2020). "A decision is final if it ends the li[ti]gation on the merits and leaves nothing for the court to do but execute the judgment." Fleet Data Processing Corp. v. Branch (In re Bank of New Eng. Corp.), 218 B.R. 643, 646 (B.A.P. 1st Cir. 1998) (citations and internal quotation marks omitted). In contrast, an interlocutory order "only decides some intervening matter pertaining to the cause, and . . . requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." Id. (citations and internal quotation marks omitted). Here, the Order denying the Second Motion for Interim Distribution is interlocutory. The bankruptcy court denied the motion as "premature," meaning

the motion was filed "before the proper, usual, or intended time." Merriam-Webster's Dictionary Online, https://www.merriam-webster.com/dictionary/premature (last visited Aug. 14, 2024). Clearly, the court's ruling contemplates that more proceedings need to occur before the motion is ripe for disposition. Further, courts have ruled that orders awarding "interim distributions are interlocutory in nature," as they are subject to subsequent adjustment. See, e.g., In re Partial Hosp. Inst. of Am., 281 B.R. 728, 734 (Bankr. S.D. Ala. 2001); see also Kingdom Fresh Produce, Inc. v. Stokes Law Office, L.L.P. (In re Delta Produce, L.P.), 845 F.3d 609, 617 (5th Cir. 2016) (stating, in the context of an interim fee award, that "the very term interim denotes that such an award is not the end of the fee dispute"); Livecchi v. Gordon, 541 B.R. 545, 547 (W.D.N.Y. 2014) (also discussing interlocutory nature of interim fee awards); United States v. Vickers (In re Fortier), 315 B.R. 829, 833 (W.D. Mich. 2004) (recognizing that interim distributions under § 726 are interlocutory). It follows, therefore, that an order *denying* a request for an interim distribution is also interlocutory. See In re Copeland, No. 1:93-CV-422, 1993 U.S. Dist. LEXIS 13894 (W.D. Mich. Sep. 10, 1993) (ruling that order denying interim compensation was interlocutory)

Accordingly, we conclude that the Order is not a final order immediately appealable as of right.

## II. Interlocutory Orders: Appealable with Leave

We also decline to exercise our discretion to hear this interlocutory appeal under 28 U.S.C. § 158(a)(3).[1] In determining whether to hear an interlocutory appeal from a bankruptcy

[1] Although the Appellant has not filed a motion seeking leave to appeal as set forth in Fed. R. Bankr. P. 8004(a)(2) (providing that an appellant seeking leave to appeal an interlocutory order "must" file a motion for leave contemporaneously with the notice of appeal), we may "treat the notice of appeal as a motion for leave and either grant or deny it." Fed. R. Bankr. P. 8004(d); see also Simon v. Amir (In re Amir), 436 B.R. 1, 8 (B.A.P. 6th Cir. 2010). We will consider whether to grant leave "based on the

court order under 28 U.S.C. § 158(a)(3), appellate courts in this circuit, including the Panel, typically apply the factors set forth in 28 U.S.C. § 1292(b), which governs interlocutory appeals to the courts of appeals. See, e.g., Canadian Pac. Ry. Co. v. Keach, No. 1:17-cv-00278-JDL, 2017 WL 4845733, at *3 (D. Me. Oct. 26, 2017) (citing In re Bank of New Eng. Corp., 218 B.R. at 652); see also Oliver C & I Corp. v. Carolina Devs. S. en C. por A., S.E., No. 20-1188 (FAB), 2020 WL 6386816, at *3 (D.P.R. Oct. 30, 2020); Me. Dep't of Health & Human Servs. v. Getchell Agency, No. 1:17-cv-00252-JAW, 2018 WL 1831412, at *3 (D. Me. Apr. 17, 2018); Nickless v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (In re Advanced RISC Corp.), 317 B.R. 455, 456 (D. Mass. 2004) (same). "Section 1292(b) permits appellate review of certain interlocutory orders, decrees and judgments . . . to allow appeals from orders other than final judgments when they have a final and irreparable effect on the rights of the parties." In re Bank of New Eng. Corp., 218 B.R. at 652 n.17 (citation and internal quotation marks omitted). The First Circuit has cautioned, however, that leave to appeal "should be used sparingly and only in exceptional circumstances . . . ." In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d 1007, 1010 n.1 (1st Cir. 1988) (citation and internal quotation marks omitted).

We consider the following § 1292(b) factors when determining whether to review an interlocutory appeal: (1) whether the order involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) whether an immediate appeal from the order might materially advance the ultimate termination of the litigation. See In re Advanced RISC Corp., 317 B.R. at 456; see also In re Bank of New Eng. Corp., 218 B.R. at 652. The party seeking interlocutory review—here the Appellant—must establish all three elements. WM Cap. Partners 53, LLC v. Allied Fin., Inc., No. 17-2015 (ADC), 2018 WL 1704474, at *2 (D.P.R.

---

papers already on file," rather than order the Appellant to file a motion for leave. See In re Lane, 591 B.R. 298, 306 (B.A.P. 6th Cir. 2018).

Mar. 30, 2018) (stating that the appellant has the burden of satisfying the three § 1292(b) factors).

Having failed to file a motion for leave to appeal, the Appellant has not attempted to satisfy the § 1292(b) test. See Fed. R. Bankr. P. 8004(a)(2) & (b)(1) (providing that an appellant seeking leave to appeal an interlocutory order "must" file a motion which sets forth, among other things, "the reasons why leave to appeal should be granted"). Based on our own analysis, we conclude the statutory test for interlocutory review is not satisfied on this record. Most critical here, the Order does not involve a "controlling question of law." A "controlling question of law" is "an abstract legal issue or what might be called one of pure law, matters the [appellate courts] can decide quickly and cleanly without having to study the record." McFarlin v. Conseco Servs., LLC, 381 F.3d 1251, 1258 (11th Cir. 2004) (citation and internal quotation marks omitted). Here, the Appellant challenges the bankruptcy court's denial of his request for an order authorizing interim distributions to creditors, a matter which was in the bankruptcy court's discretion. See, e.g., Summit Inv. Mgmt. LLC v. Connolly (In re Fog Cap Retail Inv'rs LLC), No. 22-1297, 2024 WL 659559, at *7 (10th Cir. Feb. 16, 2024) (recognizing the bankruptcy court had discretion in determining whether to approve interim distributions); Saba v. Cory (In re Flamingo 55, Inc.), No. 2:05-cv-01521-RLH-GWF, 2006 WL 2432764, at *3 (D. Nev. Aug. 21, 2006) (determining whether bankruptcy court abused its discretion in authorizing the interim distribution of the estate's funds to unsecured creditors). A matter within the bankruptcy court's discretion generally does not involve a controlling question of law. See In re Diamond Trucking, Inc., No. 3:18-CV-140 JD, 2019 WL 316711, at *4 (N.D. Ind. Jan. 24, 2019) (ruling that orders involving matters within the bankruptcy court's discretion do not involve controlling questions of law); Am. Specialty Cars Holdings, LLC v. Official Committee of Unsecured Creditors (In re

ASC Inc.), 386 B.R. 187, 196 (E.D. Mich. 2008) ("A legal question of the type envisioned in § 1292(b) . . . generally does not include matters within the discretion of the trial court") (citation omitted); In re Auto. Prof'ls, Inc., 379 B.R. 746, 760 (N.D. Ill. 2007) (declining appellate review of issue that "[did] not clearly present a controlling and contestable issue of law (but instead a matter within the bankruptcy court's discretion)").

Because the first element of the analysis under § 1292(b) is not satisfied, we need not consider the remaining two elements. See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff), No. 17-CV-2959 (VEC), 2017 WL 4417701, at *3 n.5 (S.D.N.Y. Oct. 3, 2017) (stating that because the § 1292(b) factors are "conjunctive," where one factor is not satisfied, the court did not need to address the other factors); Kore Holdings, Inc. v. Rosen (In re Rood), 426 B.R. 538, 549 (D. Md. 2010) (stating that where "the first element of the analysis [under § 1292(b)] is not present, the remaining two are essentially moot"). Consequently, we will not exercise our discretion to hear this interlocutory appeal.[2] See In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d at 1010 n.1.

[2] We also decline to exercise jurisdiction under either the Forgay-Conrad doctrine or the collateral order doctrine. The Forgay-Conrad doctrine "bestow[s] appellate jurisdiction over interlocutory orders when 'irreparable injury' to the aggrieved party may attend delaying appellate review until the litigation is over." In re Bank of New Eng. Corp., 218 B.R. at 649 n.8 (citation omitted). To be appealable under the collateral order doctrine, the order must have: "(1) conclusively determine[d] the disputed question, (2) resolve[d] an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." U.S. Fid. & Guar. Co. v. Arch Ins. Co., 578 F.3d 45, 55 (1st Cir. 2009) (quoting Will v. Hallock, 546 U.S. 345, 349 (2006)). Having failed to file a motion for leave to appeal, the Appellant has not advocated for our review of the Order under either of these doctrines and the record does not support such interlocutory review.

## CONCLUSION

Because the Order is interlocutory and does not satisfy the requirements for discretionary interlocutory review, we **DISMISS** this appeal for lack of jurisdiction.

FOR THE PANEL:

Dated: August 29, 2024

By: /s/ Leslie C. Storm
Leslie C. Storm, Clerk

cc:
By U.S. Mail: Westborough SPE LLC
By U.S. Mail and email: Lolonyon Akouete; Jeffrey T. Blake, Esq.; Jose Couto Centeio, Esq.; Brian W. Riley, Esq.
By CM/ECF: Stephen F. Gordon, Esq.; Roger L. Smerage, Esq.; Jonathan R. Goldsmith, Esq.